IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:06-cr-399 (RDA) |
| | ) | |
| KAREEM A. SAUNDERS | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Quintin Pimble's motion for modification of his sentence ("Motion"). Dkt. 142.[1] Considering Defendant's *pro se* Motion, Memorandum in Support (Dkt. 143); Defendant's Supplemental Brief by Counsel (Dkt. 158); the government's Opposition (Dkt. 152); and Defendant's Reply (Dkt. 165), this Court GRANTS-IN-PART and DENIES-IN-PART the Motion for the reasons that follow.

I.

Analysis of Defendant's Motion properly begins with the Presentence Investigation Report's ("PSR") summary of Defendant's criminal conduct.

In early 2005, Defendant sold approximately 62 grams of cocaine base to Tyrone Jones for $1,600. PSR ¶ 23. In summer 2005, Defendant and his co-defendant, Robert Barbour, began selling kilogram quantities of cocaine to brothers Ricky and Tyrone Jones for approximately $24,000 per kilogram. *Id.* ¶ 24. Defendant and Barbour both possessed an M-11 pistol during that transaction. *Id.* ¶ 25. After the initial transaction, Ricky and Tyrone Jones purchased approximately 14 additional kilograms of cocaine on different occasions. *Id.* ¶ 26. Defendant also

[1] Although Defendant originally filed his Motion *pro se*, counsel was appointed to represent Defendant and filed supplemental briefing in support of Defendant's *pro se* Motion. Dkt. Nos. 148 (appointing counsel); 158 (brief filed by counsel).

sold 62-gram quantities of cocaine and cocaine base to Myron Williams on several occasions. *Id.* ¶ 28. On other occasions, Defendant sold varying amounts of cocaine and cocaine base to multiple individuals. *Id.* ¶¶ 21-45. Additionally, Defendant and others involved in the conspiracy possessed firearms. *Id.* ¶ 50.

On December 7, 2006, Defendant was charged with three counts: (i) conspiracy with two objects, distributing 50 grams or more of cocaine base and distributing 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (ii) two counts of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Defendant went to trial on the three counts against him on January 22, 2007 before former U.S. District Judge James C. Cacheris. On January 25, 2007, the jury found Defendant guilty on all counts.

Defendant was considered a leader and organizer of the conspiracy because he had others working for him and directed their activities. PSR ¶ 49. Additionally, based on the evidence, Defendant was held accountable for at least 4.622 kilograms of cocaine (powder) and 2.003 kilograms of cocaine base (crack cocaine). *Id.* ¶ 45. The probation officer calculated Defendant's total offense level at 42 with a criminal history category of VI, based on 29 criminal history points. Although Defendant qualified as a Career Offender, the application of that provision was moot because Defendant's total offense level and criminal history category were already above the levels applicable to a Career Offender. *Id.* ¶ 93. Accordingly, the applicable guideline range was Life plus thirty years. *See* PSR, Worksheet D.

On May 2, 2007, Judge Cacheris sentenced Defendant to: (i) life on Count 1; (ii) 5 years on the first § 924(c) charge in Count 3; and (iii) 25 years on the second § 924(c) charge in Count 4. Dkt. 91. The sentence on each count was to run consecutively to one another. *Id.* Defendant was also sentenced to 10 years of supervised release on Count 1 and 5 years of supervised release

on Counts 3 and 4 to run concurrently to one another. *Id.* At sentencing, Judge Cacheris adopted the PSR and overruled Defendant's objection to the leadership enhancements and the drug amounts. *See* May 2, 2007, Minute Entry.

On April 14, 2020, Defendant filed his Motion seeking a modification of his sentence. Dkt. 142. Defendant argues that he is entitled to a reduction of his sentence under the First Step Act of 2018. *Id.* Thereafter, the Court appointed counsel to assist Defendant. Dkt. 148.

On January 29, 2021, Defendant – by counsel – filed his Supplemental Memorandum to Reduce Sentence. Dkt. 158 ("Supplemental Motion"). In his Supplemental Motion, Defendant raises two bases on which he premises his request for a sentence reduction: (i) § 404(b) of the First Step Act of 2018; and (ii) 18 U.S.C. § 3582(c)(1)(A). *Id.* at 1. Defendant requests that his sentence be reduced from Life plus 30 years to a combined sentence of 20 years. *Id.*

On February 26, 2021, the government filed its Opposition brief. Dkt. 162. The government concedes that Defendant is eligible for relief under the First Step Act, but argues that the Court should decline to reduce Defendant's sentence in light of the fact that the Fair Sentencing Act would not have effected Defendant's mandatory life sentence for conspiracy to distribute powdered cocaine and because of the amount of cocaine that Defendant conspired to distribute. *Id.* at 9-10. The government also argues that there are no extraordinary and compelling circumstances warranting compassionate release and that the 18 U.S.C. § 3553(a) factors do not support a sentence reduction. *Id.*

On March 11, 2021, Defendant filed his Reply in support of his Supplemental Motion. Dkt. 165. Defendant argues that, pursuant to the First Step Act, this Court has discretion to reduce his sentence and that the Court should exercise its discretion to reduce Defendant's "draconian" sentence. *Id.* at 1. Defendant also argues that his § 924(c) convictions should be reduced because

of how they were stacked and that his criminal history category VI overstates his criminal history. Defendant seeks a sentence reduction to 240 months or 20 years. *Id.* at 10.

On March 18, 2021, the government filed a Notice of Supplemental Authority. Dkt. 166 ("Notice"). In its Notice, the government noted the Sixth Circuit's decision in *United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) in which the Sixth Circuit held that a compassionate release motion filed pursuant to 18 U.S.C. § 3582 cannot be used to circumvent the statutory prohibition on retroactive application in § 404 of the First Step Act. *Id.* at 1.

II.

Section 404 of the First Step Act makes the Fair Sentencing Act of 2010 retroactively applicable to defendants who committed controlled substance offenses before the Fair Sentencing Act was enacted on August 3, 2010. The Fair Sentencing Act "increased the drug amounts triggering mandatory minimums for crack cocaine trafficking offenses." *Dorsey v. United States*, 567 U.S. 260, 269 (2012). The First Step Act makes clear that, even if a defendant is eligible for a sentence reduction, the decision whether to grant a reduction remains within the district court's discretion. Pub. L. 115-391, § 404(c).

Section 401 of the First Step Act modified what qualifies as a predicate offense triggering a recidivist enhancement under 21 U.S.C. § 841(b)(1)(A). Specifically, under § 401 only a "serious drug felony" or "serious violent felony, defined as an offense for which an offender actually served a term of imprisonment of more than one year." *United States v. Day*, 474 F. Supp. 3d 790, 796 (E.D. Va. 2020) (explaining impact of § 401). Additionally, § 401 reduced the mandatory minimum penalties applicable to offenders with one or more prior predicate offenses. *Id.*

A.

Section 404(a) of the First Step Act defines a "covered offense" as a violation of a federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before 2010. Whether an offense is a "covered offense" is a threshold question. *United States v. Gravatt*, 953 F.3d 258, 262 (4th Cir. 2020). The Fourth Circuit has held that "[a]ll defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act, are eligible to move for relief under the Act." *United Sates v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019). In *Gravatt*, the Fourth Circuit addressed a defendant's eligibility for First Step Act relief where that defendant's conviction involves a multi-object conspiracy and where only one object involved crack cocaine. 953 F.3d at 263-64. There, the Fourth Circuit held that the presence of a conspiracy object relating to crack cocaine renders a conviction eligible for potential relief. *Id.*

With respect to the threshold issue of whether Defendant committed a "covered" offense for purposes of the First Step Act, the government and Defendant agree that Defendant is eligible for relief as to Count 1 because one of the objects of the conspiracy involved crack cocaine. Dkt. Nos. 158 at 5 ("Mr. Saunders Was Convicted of a 'Covered Offense' for Purposes of § 404 Eligibility"); 162 at 8 ("The defendant is eligible for relief under § 404 of the First Step Act."). Thus, pursuant to *Gravatt* and based on the parties' agreement, the Court finds that Defendant is eligible for a sentence reduction.

B.

After a district court has determined that an individual defendant is eligible for First Step Act relief, the Fourth Circuit requires that the district court: first, "accurately recalculate the

Guidelines sentence range"; "[s]econd, and relatedly, district courts must correct original Guideline errors and apply intervening case law made retroactive to the original sentence"; and third, the district court must consider the § 3553(a) factors to determine what sentence is appropriate, which may include even "depart[ing] downward from the new Guidelines range." *United States v. Collington*, 995 F.3d 347, 355 (4th Cir. 2021). Furthermore, the Supreme Court has held that a district court may consider intervening changes in law or fact in adjudicating a First Step Act motion. *Concepcion v. United States*, 597 U.S. 481, 486 (2022). The Supreme Court has instructed: "Because district courts are always obligated to consider nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them. By its terms, however, the First Step Act does not compel courts to exercise their discretion to reduce any sentence based on those arguments." *Id.* at 487.

Defendant argues that his Guideline sentencing range is greatly reduced because his prior convictions no longer qualify as predicates for the recidivist enhancement under § 401. Dkt. 158 at 8-10. The government acknowledges that "neither of the prior drug offenses listed . . . can support an increased mandatory minimum," but nonetheless argues that Defendant's Guideline range should remain unchanged because, if the only object of Defendant's conspiracy was cocaine powder, Defendant would be ineligible for a sentence reduction under § 404 and because § 401 is not retroactive. Dkt. 162 at 10-11, 13-16. Although the Court takes the government's point that, if the government had charged Count 1 differently, Defendant would not be eligible for a § 404 consideration, the fact remains that Defendant *is* eligible for a reduction. Thus, the government's first point does not merit much weight as to the calculation of the Guideline sentencing range.

Turning next to whether § 401's changes to the recidivist enhancements affect Defendant's Guideline range here, the Court finds, based on the Fourth Circuit's decision in *Collington* and

elsewhere and the Supreme Court's instructions in *Concepcion*, that the legislative changes in § 401 should be treated the same as any other change in intervening law or as a judicially-corrected Guidelines error. *See Day*, 474 F. Supp. 3d at 800. As the government concedes, applying § 401 here means that Defendant's offenses do not qualify for the enhanced recidivist mandatory minimums. Thus, Defendant is only subject to a 10-year mandatory minimum sentence on Count 1 rather than a mandatory minimum sentence of life. *See* 21 U.S.C. § 841(b)(1)(A)(iii).

With respect to the Guideline sentencing range, Defendant also argues that changes to the Drug Quantity Table, pursuant to the revised USSG § 2D1.1, result in Defendant's total offense level dropping from 37 to 36. Dkt. 165 at 7.[2] The government does not address this argument. But, again applying the intervening changes in the law, the Court agrees with Defendant. *See* USSG 2D1.1(c) (Drug Quantity Table). Accordingly, with this change to the base offense level and applying the other applicable enhancements from the PSR, Defendant has a total offense level of 36 and a Criminal History Category of VI, which results in a Guideline sentencing range of 324 to 405 months.

Defendant next argues that his Criminal History Category overstates his criminal history, such that it should be reduced. Here, the Court disagrees with Defendant. The probation officer calculated Defendant's Criminal History Category at VI, based on 29 criminal history points. Defendant does not dispute this calculation, but argues that it overstates his criminal history, because many of his criminal history points were for misdemeanor offenses. Dkt. 158 at 21-22. A district court has discretion to depart downward based on criminal history, "[i]f reliable

---

[2] Defendant also makes an argument regarding whether he qualifies as a career offender under USSG § 4B1.1 following *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019). Because the probation officer did not apply a career offender enhancement, PSR ¶ 93 (finding that the application was moot), the Court does not now consider Defendant a career offender in calculating the guidelines.

information indicates that the defendant's criminal history category substantially over-represents the seriousness of defendant's criminal history or likelihood that the defendant will commit other crimes." USSG § 4A1.3(b)(1). The examples given in the application notes to the Guidelines are: (i) where a defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period; and (ii) where a defendant criminal history points for possessing marijuana for personal use. *Id.* App. Note 3(A). These examples do not reflect this Defendant. As the government notes, Defendant would qualify for a Criminal History Category V with 13 criminal history points, even if the Court only considered Defendant's most serious convictions (the three felonies and the brandishing of a firearm) along with the points for showing disrespect for the law (by committing the offense while under criminal justice supervision and less than two years after release from imprisonment). Dkt. 162 at 24.[3] To depart downward, as Defendant suggests, would be to award no points for Defendant's numerous driving offenses, receipt of stolen property offenses, and altered license plate offense. *See* PSR, Worksheet C. Although the Court has discretion to depart downward, the Court finds that a Criminal History Category VI does not overstate Defendant's criminal history and therefore Defendant will remain at a Criminal History Category VI.[4] Thus, the applicable Guideline sentencing range remains 324 to 405 months.

C.

[3] Indeed, one of the misdemeanor offenses that Defendant seeks to discount, is his brandishing conviction, during which Defendant told the victim that "he was going to blow his brains out." PSR ¶ 67.

[4] In arguing for a departure with respect to his Criminal History Category, Defendant makes several arguments regarding his youth at the time of his offenses. Dkt. 158 at 23-24. Those arguments are more pertinent with respect to the § 3553(a) factors rather than with respect to whether a downward departure is appropriate, and the Court will consider them with respect to what is an appropriate sentence.

Pursuant to the Fourth Circuit's instructions in *Collington*, the Court must next assess the § 3553(a) factors in determining whether to reduce Defendant's sentence on Count 1 and, if so, by how much. 995 F.3d at 355. Defendant seeks a sentence reduction to 240 months, whereas the government argues that no reduction is appropriate. *Comp.* Dkt. 158 at 25 *with* Dkt. 162 at 11-13. The Court finds that the appropriate resolution is somewhere in the middle, such that Defendant's sentence on Count 1 will be reduced, but not to the extent sought by Defendant.

In Count 1, Defendant was convicted of a serious drug offense that involved large quantities of both powder and crack cocaine. Moreover, Defendant had a leadership or management role in a conspiracy that lasted for years and personally used firearms to further the conspiracy. PSR ¶¶ 25, 32, 34-35, 41, 48-50. The nature and circumstances of the offense are made more serious by the fact that Defendant has a history of prior felony convictions for distribution of cocaine, malicious wounding, use of a firearm in commission of a felony, and possession of cocaine and that Defendant was on court supervision at the time that he led the conspiracy at issue here. That Defendant was on court supervision at the time of the conspiracy also emphasizes that Defendant needs to be deterred and that he lacks respect for the law.

The needs for deterrence, punishment, and respect for the law are counterbalanced by other considerations in the § 3553(a) calculus. Although Defendant was not a teenager at the time of the instant offenses, he was 25 years old, and two of his more serious prior convictions (for distribution of cocaine and malicious wounding) occurred when Defendant was 17 and 19. PSR ¶¶ 61-62. Defendant argues that he is now in his 40s and is therefore less likely to reoffend. Dkt. 158 at 23. This argument carries some force, but the weight of it is substantially undercut by Defendant's disciplinary record while incarcerated. Dkt. Nos. 162-1; 162-2. Defendant has on three separate occasions been found guilty of being in possession of a dangerous weapon in prison,

including as recently as 2018, and has also three times been found guilty of possessing drugs or alcohol in prison, including as recently as 2020. *Id.*[5] This disciplinary history undermines Defendant's argument that his criminal history was just a product of his youth.

The Court must also consider the new Guideline sentencing range and the sentences available. The First Step Act and the Fair Sentencing Act were Congressional attempts to provide a national reckoning with the harsh penalties imposed with respect to cocaine and, in particular, crack cocaine. *Kimbrough v. United States*, 552 U.S. 85, 108-10, (2007) ("Indeed, the Commission itself has reported that the crack/powder disparity produces disproportionately harsh sanctions."). The Court must also look to intervening changes in the law that make the kinds of sentences available to Defendant significantly less than the mandatory life sentence that Defendant faced on Count 1 in 2007. *Collington*, 995 F.3d at 355. In considering these changes, however, the Court also recognizes that, but for the government charging a multi-object conspiracy, Defendant would not be eligible for a sentence reduction at all and therefore the Court must be mindful of similarly situated defendants who were convicted of distributing similar amounts of powdered cocaine and thus are ineligible for a sentence reduction.

Overall, the First Step Act grants broad discretion to the Court to reduce Defendant's sentence here. *United States v. Hardnett*, 417 F. Supp. 3d 725, 735 (E.D. Va. 2019). Based on the Court's consideration of the § 3553(a) factors, including the nature and circumstances of the offense and the new Guideline range, the Court finds that a sentence reduction to the middle of the new guideline range is appropriate. Accordingly, the Court will reduce Defendant's sentence on Count 1 from Life to 360 months (or 30 years).

[5] Defendant maintains that these offenses only involved alcohol.

III.

Defendant next argues that he is entitled to a sentence reduction or compassionate release pursuant 18 U.S.C. § 3582. As a preliminary matter, the record reflects that Defendant has fully exhausted his administrative remedies, and therefore the motion for a sentence reduction is ripe for disposition. The legal standard for evaluating such motions is well settled. Simply put, a defendant seeking a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) bears the burden of establishing (1) that there are "extraordinary and compelling reasons" warranting a sentence reduction and (2) that analysis of the § 3553(a) factors counsels that a sentence reduction is appropriate as a matter of judicial discretion. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Sprague*, 838 F. App'x 775, 775–76 (4th Cir. 2021); *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021). Here, Defendant raises two arguments in support of finding extraordinary and compelling circumstances: (i) the COVID-19 pandemic; and (ii) the stacking of his § 924(c) offenses. Each argument and the § 3553(a) factors will be considered in turn.

A.

Defendant first argues that he has established extraordinary and compelling circumstances because his health conditions place him at risk if he contracts COVID-19. Dkt. 158 at 12. Defendant asserts that he is obese and that he suffers from hypertension and sleep apnea. *Id.* Defendant further asserts that USP McCreary is unsafe because of the presence of active cases of COVID-19 at the time his motion was briefed. Dkt. 165.

Conditions are substantially different now than at the time that Defendant originally filed his motion for compassionate release. Courts have generally recognized that – in light of advances in treatment, prevention, and vaccines – "the threat from COVID-19 has diminished nationwide and within the BOP." *United States v. Gonzales*, 2023 WL 6386139, at *2 (W.D.N.Y. Oct. 2,

2023). Even assuming that circumstances were not drastically altered, Defendant would still not be able to establish extraordinary and compelling circumstances based on his medical conditions. As courts within this District have recognized, approximately 42 percent of Americans are obese, such that "[a]ssuming federal prisoners experience [obesity and severe obesity] at about the same rate as the general population, if either one qualified as an extraordinary and compelling reason, roughly half of the prison population would be eligible for compassionate release." *United States v. Williams*, 2021 WL 5827327, at *3 (E.D. Va. Dec. 8, 2021) (quoting *United States v. Hayes*, 2020 WL 3611485, at *2-3 (M.D. Fla. July 2, 2020)). Similarly, courts have recognized that hypertension[6] and sleep apnea (which is being addressed in prison)[7] are other common ailments that do not warrant compassionate release. Finally, Defendant does not currently have a particularized risk of contracting COVID-19 at his facility. According to the available BOP

---

[6] *See United States v. Cox*, 2020 WL 4581692, at * 1 (E.D. Mich. Aug. 10, 2020) (explaining that a diagnosis of hypertension does not constitute extraordinary and compelling reasons and noting that "hypertension is a common medical condition shared by over 100 million Americans."); *United States v. Hall*, 2020 WL 4582712, at *2 (D. Md. Aug. 10, 2020) (explaining that the defendant's hypertension diagnosis does "not sufficiently differentiate him from the thousands of similarly situated incarcerated individuals to constitute extraordinary and compelling reasons."); *United States v. Chambers*, No. 18-47, 2020 WL 4260445, at *4 (E.D. La. July 24, 2020) (denying motion for compassionate release for 51-year-old male defendant with hypertension and other alleged medical conditions, explaining that "courts have found that hypertension does not amount to an extraordinary or compelling reason for release" during the COVID-19 pandemic) (collecting cases).

[7] *See United States v. Morris*, 2023 WL 6204545, at *4 (E.D. Va. Sept. 22, 2023) (finding defendant's sleep apnea, which was being addressed, did not constitute extraordinary and compelling circumstances); *United States v. Ford*, 2020 WL 7336882, at *2 (D. Md. Dec. 14, 2020) (finding that defendant's high blood pressure and sleep apnea did not constitute extraordinary and compelling circumstances); *United States v. Landry*, 2021 WL 5493497, at *4-5 (E.D. Va. Nov. 22, 2021) (find that defendant's hypertension, hyperlipidemia, sleep apnea, and hernia did not constitute extraordinary and compelling circumstances).

statistics, USP McCreary has zero open cases of COVID-19.[8] Thus, Defendant cannot establish extraordinary and compelling circumstances warranting compassionate release based on the COVID-19 pandemic.

B.

Defendant next seeks to reduce his sentence based on the so-called "stacking" of his § 924(c) convictions. In *United States v. McCoy*, the Fourth Circuit held that the "severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." 981 F.3d 271, 285 (4th Cir. 2020). There, defendant Thomas McCoy was indicted for involvement in a string of twelve robberies but was allowed to plead guilty to two § 924(c) counts and one count of Hobbs Act robbery. Because he was sentenced before the First Step Act, McCoy received a harsh mandatory minimum sentence of approximately thirty-five years in prison. *Id.* at 277. Following enactment of the First Step Act, a district court reduced McCoy's sentence pursuant to § 3582(c)(1)(A) to time served (approximately seventeen years). The Fourth Circuit affirmed, holding that the disparity between the pre- and post-First Step Act mandatory minimum sentences for multiple § 924(c) offenses gave rise to extraordinary and compelling circumstances warranting relief. *Id.* at 286.[9]

The facts presented here with respect to this Defendant are analogous in some respects to those presented by the defendant in *McCoy*. Like the defendant in *McCoy*, this Defendant here pled guilty to two § 924(c) counts and thus, under the pre-First Step Act framework, faced the

---

[8] *See https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData* (last visited May 7, 2024).

[9] The Fourth Circuit noted that the district court also relied on the fact that "McCoy was a teenager with no relevant criminal history at the time of his offenses." *McCoy*, 981 F.3d at 278.

severe stacking of consecutive terms of five and twenty-five years, which were also consecutive to his conspiracy conviction on Count 1. Moreover, as the Fourth Circuit in *McCoy* recognized, there is an "enormous disparity" between the pre-First Step Act mandatory minimum sentence of thirty years that Defendant received and the post-First Step Act mandatory minimum sentence of ten years for two § 924(c) offenses. *Id.* at 285. Accordingly, given the Fourth Circuit's binding *McCoy* precedent, it is appropriate to conclude here that Defendant has identified "extraordinary and compelling" reasons warranting reduction of his sentence under § 3582(c)(1)(A).

The government's arguments to the contrary are not persuasive. First, the government contends that, because Defendant is subject to a life sentence on Count 1, any reduction on his § 924(c) counts will not result in a reduction to his overall sentence. But the Court has already found that reducing Defendant's sentence on Count 1 is appropriate. Next, the government argues that the *McCoy* Court relied on McCoy's relative youth (he was a teenager) and lack of criminal history in finding extraordinary and compelling circumstances. Defendant's youth and criminal history goes to whether to reduce Defendant's sentence and to what extent, but does not alter the extraordinary and compelling circumstances based on the disparity between available sentences pre- and post-First Step Act. Finally, the government argues that the *McCoy* defendant had already served a substantially greater portion of his sentence than Defendant here. The government does not explain, however, why that fact should preclude a sentence reduction to something other than time served (which defendant is not seeking). This argument also seems more appropriate with respect to the extent of any sentence reduction rather than whether extraordinary and compelling circumstances exist.

Accordingly, Defendant has established extraordinary and compelling circumstances warranting a sentence reduction pursuant to the Fourth Circuit's precedent in *McCoy*, which involved facts substantially similar to those presented here.[10]

C.

Because Defendant has identified extraordinary and compelling reasons warranting a sentence reduction, it is now necessary to assess, under the § 3553(a) factors, whether a reduction on Counts 3 and 4 is appropriate with respect and, if so, the appropriate extent of the reduction.

Here, the mandatory minimum sentence on Count 3 is unchanged. It remains five years pre- and post-First Step Act. Accordingly, the Court will not reduce Defendant's sentence on Count 3. The question next becomes whether and to what extent the Court should reduce Defendant's sentence on Count 4, where the mandatory minimum sentence has been reduced from 25-years to five years.

As discussed previously, Defendant committed a serious offense, was the leader of the conspiracy, has an extensive criminal history, and has a serious disciplinary record while incarcerated. All of these facts demonstrate that Defendant needs to be deterred and that his sentence must promote respect for the law.

However, it is also clear that Defendant's current sentence is excessive in relation to the needs of general and specific deterrence and the other factors set forth in § 3553(a). Importantly,

---

[10] In a more recent opinion, the Fourth Circuit has explicitly held that a sentence like Defendant's meets the extraordinary and compelling circumstances threshold as explained in *McCoy*. *See United States v. Brown*, 78 F. 4th 122, 131 (4th Cir. 2023) (discussing the "sheer length and disparate nature of Brown's sentence" makes clear that it is a "grievous case[]" where Brown was sentenced to thirty years on two § 924(c) convictions and would face a only a ten-year mandatory minimum today). Indeed, in *Brown*, the Fourth Circuit took the unusual step of reducing the defendant's sentence itself, rather than remanding the case to the district court. *Id.* at 133-134.

§ 3553(a)(4) instructs a court to consider the "sentences available," and it is therefore worth observing that a sentence of twenty-five years on Count 4 constitutes more five times the total mandatory term of imprisonment that Congress has now deemed fit for that conviction.

Section 3553(a) also makes clear that district courts must consider applicable provisions of the Federal Sentencing Guidelines and take care to avoid unwarranted disparities between defendants. 18 U.S.C. § 3553(a)(4)-(6). In that regard, *McCoy* and other recent decisions provide important barometers. The defendant in *McCoy* ultimately served seventeen years after his sentence was reduced and the court there focused in part on the defendant's youth and lack of criminal history. Here, Defendant was older at the time of his offense (25) and had a significant criminal history (Category VI).

Applying the § 3553(a) factors, the Court believes that a sentence reduction on Count 4 is appropriate, but that, given the circumstances of the offense, Defendant's leadership role, and his criminal history, reducing his sentence to five years is not appropriate. Accordingly, the Court will reduce Defendant's sentence on Count 4 to 96 months (eight years). This represents a substantial reduction in Defendant's sentence, while also recognizing the need for deterrence, respect for the law, and the specific facts of this case. Moreover, because Congress still mandates that § 924(c) sentences be consecutive, Counts 3 and 4 remain consecutive to each other and to Defendant's sentence on Count 1.

IV.

In sum, the Court reduces Defendant's total sentence from Life plus 30 years to 43 years (or 516 months). This represents: (i) a reduction on Count 1 from Life to 30 years; (ii) no change to Count 3; and (iii) a reduction on Count 4 from 25 years to eight years. All other terms and conditions of Defendant's sentence remain the same.

Accordingly, it is hereby ORDERED that Defendant's motion for a sentence reduction (Dkt. 142) is GRANTED IN PART AND DENIED IN PART. The motion is granted insofar as Defendant's sentence will be reduced but denied insofar as the reduction will not be as great as that sought by Defendant; and it is

FURTHER ORDERED that Defendant's term of incarceration is hereby REDUCED from Life plus 30 years to 516 months (or 43 years), which represents a sentence of 360 months on Count 1, a sentence of 60 months on Count 3, and a sentence of 96 months on Count 4, with each sentence to run consecutively to one another. All other terms and conditions imposed by the May 9, 2007 Judgment in a Criminal Case (Dkt. 91), including the ten-year term of supervised release, remain in full force and effect.

It is SO ORDERED.

Alexandria, VA
May 15, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge